**In re KEYDATA CORPORATION, Debtor.**

**MASSACHUSETTS ELECTRIC COMPANY, Appellant,**

v.

**KEYDATA CORPORATION, Appellee.**

No. 81–9003.

Bankruptcy Appellate Panel, D. Massachusetts.

July 2, 1981.

---

Henry Friedman, Boston, Mass., for appellant.

Charles W. Morse, Jr., J. Christopher Robinson, and Bryan G. Killian, Sullivan & Worcester, Boston, Mass., for appellee.

Before CYR, C. J., and VOTOLATO and JOHNSON, JJ.

VOTOLATO, Bankruptcy Judge.

An appeal has been taken by the Massachusetts Electric Co. (MEC) from an injunction and order of the bankruptcy court fixing adequate assurance pursuant to 11 U.S.C. § 366(b). The order appealed from states, in part:

> FOUND that based upon the evidence submitted by Massachusetts Electric Company and based upon the fact that Massachusetts Electric Company would have a claim for an expense of administration to the extent that the Debtor failed to make payment for electric power furnished during the course of this chapter 11 case, a deposit of $25,000 is adequate assurance of payment within the meaning of 11 U.S.C. § 366(b). . . .

MEC contends that the bankruptcy court committed reversible error (1) in finding that a deposit of $25,000 constituted adequate assurance of payment, and (2) in considering MEC's potential administrative expense claim under 11 U.S.C. § 507(a)(1), a relevant factor in determining adequate assurance. Bankruptcy Code § 366 which governs the relationship between a supplier of utility service and a debtor, provides:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes *adequate assurance of payment*, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment. [emphasis added]

MEC contends that the order of the bankruptcy court does not provide adequate assurance, arguing that from the time the meter is read, the bill computed, mailed, received and held by Keydata for 7 days (the length of time determined by the bankruptcy court), approximately 13 days will have elapsed. During this time, Keydata will continue to consume electricity that is neither included in the most recent bill, nor covered by a deposit.[1] In effect, MEC maintains that there is a 13-day period of unprotected risk each month during which it is not provided adequate assurance of payment.

---

1. This point was raised by MEC at the hearing in the bankruptcy court. As with most of the evidence brought to the court's attention, that item was not specifically included as a "finding" in the short order issued by the bankrupt- cy judge. We do not assume that because every bit of evidence was not recited in the order, that such evidence was not considered by the bankruptcy judge in arriving at his decision.

**158**

The phrase "adequate assurance of payment" is not defined in the Code. Its meaning depends upon the facts and circumstances of each case, keeping in mind the intent of Congress to protect the utility company while preventing discrimination against the debtor. *In re Cunha*, 1 B.R. 330 (Bkrtcy.E.D.Va.1979) (Bonney, B. J.). In our view, "adequate assurance of payment" does not require an absolute guarantee of payment. What is required is that the utility be protected from an unreasonable risk of nonpayment. Possible loss during a billing delay is a risk inherent in MEC's dealings with any of its customers.[2] We do not consider the present risk unreasonable, and based on the record before us, the determination that a $25,000 deposit in these circumstances constitutes "adequate assurance of payment," is not clearly erroneous, even excluding the administrative expense priority from consideration.

If continued electric service is, in the circumstances of the case, an "actual and necessary" expense of preserving the estate, then MEC may be entitled to an administrative expense claim. *See* 11 U.S.C.

§ 503. Section 507(a)(1) entitles administrative expenses first priority in the distribution of the estate. MEC questions the propriety of the bankruptcy court considering this as a relevant factor in determining what would constitute adequate assurance of payment, but offers no support for its position. We are satisfied, in the absence of any specific legislative guidance to the contrary, that Section 507(a)(1) may be considered, along with all other relevant factors, in prescribing adequate assurance of payment under Section 366(b).

This opinion is without prejudice, of course, to the continuing right of either party to seek review of the adequacy of the $25,000 deposit if conditions change substantially from those prevailing at the time of the entry of the order in question.

Affirmed.

**2.** It does not appear in the Code or the legislative history that Congress ever intended that utilities receive higher protection in chapter 11 than they enjoy in their regular dealings with customers outside the bankruptcy court.